## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANDY FLEEGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     CIVIL ACTION NO. 07-16 |
| | ) |
| STATE FARM MUTUAL | )     JUDGE KIM R. GIBSON |
| AUTOMOBILE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on the Motions for Summary Judgment filed by Plaintiff

Mandy Fleeger ("Fleeger") and Defendant State Farm Mutual Automobile Insurance Company

("State Farm"). Doc. Nos. 18 & 21. For the reasons that follow, Fleeger's Motion for Summary

Judgment will be denied and State Farm's Motion for Summary Judgment will be granted.

### II. BACKGROUND

Fleeger is an adult individual who resides in DuBois, Pennsylvania. Doc. Nos. 19 & 29, ¶ 1.

State Farm is a corporation licensed to do business in the Commonwealth of Pennsylvania. *Id.* ¶ 2.

It maintains its principal place of business in Bloomington, Illinois. *Id.*

During the period of time at issue, Fleeger lived with Joseph Barr ("Barr"), her boyfriend,

in DuBois. *Id.* ¶ 7. Barr owned a 1990 GMC Safari cargo van. *Id.* ¶ 6. He was the only named

insured under Policy Number 011 0208 D03 38A ("Safari policy"), which was an automobile

liability insurance policy issued by State Farm. *Id.* ¶ 8. This policy insured Barr's van, and provided bodily injury liability coverage in the amount of $25,000.00 per person. *Id.* Barr used the van for business purposes, and it was not available for Fleeger's use. *Id.* ¶ 9. Fleeger did not operate the van. *Id.*

Fleeger and Barr were co-owners of a 1996 Isuzu Rodeo vehicle. *Id.* ¶ 12. The vehicle was insured under Policy Number 021 2222 A30 38C ("Isuzu policy"), which was also issued by State Farm. *Id.* Fleeger and Barr were both listed as named insureds. *Id.* This policy provided underinsured motorist ("UIM") coverage in the amount of $15,000.00 per person, not to exceed a total of $30,000.00 for each accident. *Id.*

On November 8, 2004, Barr was operating his van in DuBois, and Fleeger was riding along as a passenger. *Id.* ¶ 6. Barr was driving under the influence of alcohol. *Id.* While proceeding down South Highland Street, the van struck a utility pole. *Id.* Fleeger sustained serious injuries in this accident, as her right humerus was fractured. *Id.* ¶ 3. She continues to suffer from scarring, disfigurement, and permanent residual problems resulting from the accident. *Id.* ¶ 4. She was unable to work between the date of the accident and May 2, 2005. *Id.* ¶ 5. State Farm tendered $25,000.00 to Fleeger on August 31, 2006, pursuant to the Safari policy. *Id.* ¶ 10. Through correspondence dated September 5, 2006, State Farm consented to Fleeger's settlement of her underlying tort claim against Barr and waived its subrogation rights. *Id.* ¶ 11.

In a letter dated July 13, 2006, Sheila R. Winstead ("Winstead"), a case manager for Edgar Snyder & Associates, LLC, informed State Farm that Fleeger's damages were in excess of the $25,000.00 available under the Safari policy, and that a UIM claim would be presented. Doc. No.

2

1, ex. 4, p. 4. State Farm claim representative Charles Graham ("Graham") responded that Barr's van did not qualify as an underinsured motor vehicle, and that Fleeger's UIM claim was being denied on that basis. *Id.* at 6. In reply, Winstead asked that all documentation supporting State Farm's basis for denying Fleeger's UIM claim be sent to her, indicating that she believed Fleeger to be entitled to UIM coverage under the Isuzu policy. *Id.* at 7. State Farm apparently neglected to respond to Winstead's request.

Through correspondence from Attorney Todd Berkey ("Berkey") to Graham dated October 25, 2006, Fleeger informed State Farm that Barr's van had not been available for her regular use. *Id.* at 8-9. State Farm's denial of Fleeger's UIM claim had apparently been premised upon the idea that she had been able to use Barr's van on a regular basis. Included with Berkey's correspondence were notarized affidavits from both Fleeger and Barr declaring that the van had not been available to Fleeger for her regular use. *Id.* at 10-13. Berkey's letter stated that if State Farm did not either make an offer of UIM benefits to Fleeger or provide documentation supporting its denial of coverage within ten days, legal action would be taken to effectuate Fleeger's rights under her insurance contract. *Id.* at 9.

In response, Attorney Thomas A. McDonnell ("McDonnell") stated that State Farm was denying Fleeger's UIM claim not on the ground that the van had been available for Fleeger's regular use, but rather on the ground that the van had been available for Barr's regular use. *Id.* at 14-16. Barr, of course, was both a co-owner of the 1996 Isuzu Rodeo vehicle and a named insured under the Isuzu policy. Attorney Gregory Olsavick ("Olsavick") responded with a letter to both Graham and McDonnell disputing State Farm's basis for denying Fleeger's UIM claim. *Id.* at 17-18.

3

Olsavick's letter threatened legal action on behalf of Fleeger if State Farm failed to provide the limits of the UIM coverage within ten days. *Id.* at 18. Shortly thereafter, McDonnell reiterated State Farm's position to Olsavick. *Id.* at 19-20. Olsavick responded by giving State Farm until December 15, 2006 to provide Fleeger with UIM coverage. *Id.* at 21-23. McDonnell continued to defend State Farm's basis for denying Fleeger's UIM claim. *Id.* at 24-25.

Fleeger commenced this action against State Farm on January 19, 2007, seeking relief under Pennsylvania's common law of contracts and the Pennsylvania Bad Faith Statute, 42 PA. CONS. STAT. § 8371. Doc. No. 1. The parties filed Cross-Motions for Summary Judgment on October 19, 2007. Doc. Nos. 18 & 21. Discovery regarding the claim under the Bad Faith Statute has not yet been completed. Doc. Nos. 15 & 17. The pending Motions for Summary Judgment concern only the claim under Pennsylvania's common law of contracts, which arises from a dispute as to how the language of the Isuzu policy should be construed. Doc. Nos. 18 & 21. These motions are the subject of this Memorandum Opinion.

### III. SUMMARY JUDGMENT STANDARDS

The Third Circuit explained:

> Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Fed. R. Civ. P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-212 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani* [*Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 638 (3d Cir. 1993)].

4

*Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

The Supreme Court explained:

> As to materiality, the substantive law will identify which facts
> are material. Only disputes over facts that might affect the
> outcome of the suit under the governing law will properly
> preclude the entry of summary judgment. Factual disputes that
> are irrelevant or unnecessary will not be counted. See generally
> 10A C. Wright, A. Miller, & M. Kane, Federal Practice and
> Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is
> independent of and separate from the question of the
> incorporation of the evidentiary standard into the summary
> judgment determination. That is, while the materiality
> determination rests on the substantive law, it is the substantive
> law's identification of which facts are critical and which facts
> are irrelevant that governs. Any proof or evidentiary
> requirements imposed by the substantive law are not germane to
> this inquiry, since materiality is only a criterion for categorizing
> factual disputes in their relation to the legal elements of the
> claim and not a criterion for evaluating the evidentiary
> underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211

(1986).

## IV. JURISDICTION AND VENUE

The Court has jurisdiction over Fleeger's claims pursuant to 28 U.S.C. § 1332(a)(1).[1]

---

[1]The Court has an obligation to address the issue of subject matter jurisdiction *sua sponte* in any case in which it is in
question. *Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002). In order for diversity-of-citizenship jurisdiction
to exist under 28 U.S.C. § 1332(a)(1), the amount in controversy must exceed the sum or value of $75,000.00. The
amount sought by Fleeger in her UIM claim against State Farm is $15,000.00. Doc. No. 1, ¶¶ 31-34. Nevertheless,
Fleeger also asserts a claim under 42 PA. CONS. STAT. § 8371, which permits a court to award, upon a showing of "bad
faith" on the part of an insurer, "interest on the amount of the claim from the date the claim was made by the insured in
an amount equal to the prime rate of interest plus 3%," punitive damages, court costs, and counsel fees. Section 1332(a)
provides that the statutory amount in controversy must be determined "exclusive of interest and costs." 28 U.S.C. §

Venue is proper under 28 U.S.C. § 1391(a).

## V. DISCUSSION

A federal district court exercising diversity jurisdiction applies state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R.. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). Because jurisdiction in this case is based on diversity of citizenship, this Court must apply the choice of law rules applicable in Pennsylvania. *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008). The parties apparently agree that such rules would require the application of Pennsylvania's substantive law. Accordingly, the Court will analyze the legal issues in this case in accordance with Pennsylvania law. The applicable decisions of the Pennsylvania Supreme Court must control the Court's analysis. *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 650, n. 4 (3d Cir. 1982). In discerning the content and dictates of Pennsylvania law, this Court looks to Pennsylvania's statutes and the decisions of Pennsylvania's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 79, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Where a state's high court has not issued a controlling opinion, the Third Circuit explained:

> In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court

---

1332(a). Since the interest and costs available under § 8371 are a part of a statutory cause of action, however, they are not treated as excluded "interest and costs" within the meaning of § 1332(a), and are considered to be a part of the amount in controversy in this case. *Missouri Life Ins. Co. v. Jones*, 290 U.S. 199, 202, 54 S. Ct. 133, 78 L. Ed. 267 (1933); *Suber v. Chrysler Corporation*, 104 F.3d 578, 585 (3d Cir. 1997); *Henderson v. Nationwide Mut. Ins. Co.*, 169 F. Supp. 2d 365, 368 (E.D. Pa. 2001). In addition, jurisdiction exists in this case because § 8371 permits an award of punitive damages. 42 PA. CONS. STAT. § 8371(2). Where both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the amount-in-controversy requirement is satisfied. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938)(footnote omitted). Dismissal on jurisdictional grounds would be improper because there is not legal certainty that the claim is for less than $75,000.

would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and the works of scholarly commentators.

*Penn. Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1982). With respect to issues that have not been decided by the Pennsylvania Supreme Court, this Court must consider decisions rendered by other Pennsylvania courts, decisions rendered by federal courts applying Pennsylvania law, and decisions rendered by courts in other states concerning similar issues for the purpose of ascertaining the law of Pennsylvania. *Norfolk S. Ry. Co. v. Basell USA, Inc.*, 512 F.3d 86, 91-92 (3d Cir. 2008).

The dispute between Fleeger and State Farm centers on two related issues, both of which concern the same basic question of whether State Farm is required to provide UIM coverage for Fleeger's injuries. The initial question is whether Fleeger is contractually entitled to UIM coverage under the terms of the Isuzu policy. If that question is answered in the negative, a further inquiry must be made as to whether Fleeger is statutorily entitled to UIM coverage under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS. STAT. § 1701 *et seq.*

The Court's analysis, of course, must begin with an examination of the applicable language of the insurance contract.[2] The UIM coverage clause of the Isuzu policy provides:

---

[2]The MVFRL generally requires an insurer to offer "stacked" uninsured motorist ("UM") and underinsured motorist ("UIM") coverage. Nevertheless, an insured may waive his or her right to stacked coverage. The applicable statutory language provides:

**§ 1738. Stacking of uninsured and underinsured benefits and option to waive**

7

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the ownership, maintenance or use of an *underinsured motor vehicle*.

Doc. No. 23, ex. 2, p. 20 (emphasis in original). UIM coverage for bodily injury under the Isuzu

policy becomes available only after an insured has received a written offer of the limits of liability

available under any applicable liability insurance policies, or after such limits have been exhausted

by the payment of such limits to other persons pursuant to judgments or settlement agreements. *Id.*

at 21.

Particularly relevant to the instant case are the clauses of the Isuzu policy defining the term

"underinsured motor vehicle." Those clauses provide:

> **(a) Limit for each vehicle.**–When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.
>
> **(b) Waiver.**–Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.
>
> **(c) More than one vehicle.**–Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 PA. CONS. STAT. § 1738(a)-(c). The statute further provides a sample form to be executed by an insured who wishes to execute a waiver of his or her right to stacked coverage, declaring any purported rejection of stacked coverage effectuated in some other manner to be void. 75 PA. CONS. STAT. § 1738(d)-(c). In its initial brief, State Farm argued that Fleeger and Barr had rejected stacked coverage, thereby precluding Fleeger's UIM claim in this case. Doc. No. 22, pp. 3-7. Fleeger disputed this assertion in her responsive brief. Doc. No. 27, pp. 1-5. In its reply brief, State Farm withdrew this argument, indicating that its counsel had simply misread the declarations page applicable to the Isuzu policy. Doc. No. 28, p. 1. Because State Farm has withdrawn its argument concerning this issue, the Court need not address it. The Court's analysis proceeds on the assumption that Fleeger and Barr did not waive their statutory right to stacked UIM coverage.

*Underinsured Motor Vehicle*–means a land motor vehicle:

> 1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
>
> 2. whose limits of liability for bodily injury liability:
>
> > a. are less than the amount of the *insured's* damages;

or

> > b. have been reduced by payments to *persons* other than the *insured* to less than the amount of the *insured's* damages.

An *underinsured motor vehicle* does not include a land motor vehicle:

> 1. insured under the liability coverage of this policy;
>
> 2. furnished for the regular use of *you, your spouse* or any *relative*;
>
> 3. owned by any government or any of its political subdivisions or agencies;
>
> 4. while located for use as a dwelling or other premises;
>
> 5. designed for use mainly off public roads except while on public roads; or
>
> 6. defined as an *uninsured motor vehicle* in *your* policy.

*Id.* (emphasis in original). The exclusion at issue in this case is the second exclusion listed above, which the Court will refer to as the "regularly used vehicle exclusion."

The record contains affidavits from both Fleeger and Barr declaring that Barr's van was not available for Fleeger's regular use, and that it had been used only by Barr. Doc. No. 1, ex. 4, pp. 10-13. It is undisputed that Barr was not a "spouse" or "relative" of Fleeger at the time of the accident. State Farm's basis for denying Fleeger's UIM claim rests on the impact of the term "you." The Isuzu policy defines the term "you" as follows: "*You* or *Your*–means the named insured or named insureds shown on the declarations page." Doc. No. 23, ex. 2, p. 7 (emphasis in original). As noted earlier, both Fleeger and Barr are listed as named insureds on the declarations page for the Isuzu policy. Doc. No. 1, ex. 4, p. 3. State Farm contends that Barr's van does not qualify as an "underinsured

9

motor vehicle" under the Isuzu policy because the vehicle had been furnished for the regular use of Barr within the meaning of the regularly used vehicle exclusion. Doc. No. 28, p. 2. According to the logic posited by State Farm, it is immaterial whether the van had been furnished for the regular use of Fleeger, since it is undisputed that the van had been furnished for the regular use of Barr.

Fleeger argues that since she is the party seeking UIM coverage, the language of the Isuzu policy must be construed solely from her perspective. Doc. No. 20, p. 9. She also points out that Section III of the Isuzu policy, which governs uninsured motorist ("UM") and UIM claims, defines the term "insured" as "the first *person* named in the declarations."[3] Doc. No. 23, ex, 2, p. 21 (emphasis in original). On the declarations page for the Isuzu policy, Fleeger's name appears first. Doc. No. 1, ex. 4, p. 3. Consequently, she asserts that she is clearly the "insured" referenced in the Isuzu policy's UIM coverage clause.

Where the language of an insurance contract is ambiguous, the unclear language must be construed in favor of coverage. *Prudential Prop. & Cas. Co. v. Sartno*, 903 A.2d 1170, 1177 (Pa. 2006). Nevertheless, there is nothing ambiguous about the applicable policy language at issue in this case. The Isuzu policy clearly defines the term "you" to mean "the named insured *or named insureds shown on the declarations page*." Doc. No. 23, ex. 2, p. 7 (emphasis added). Given this unambiguous definition, the term "you," as it appears within the language of the regularly used

---

[3]The Isuzu policy makes it clear that the term "insured" has different meanings when used within the language of different sections of the policy. Doc. No. 23-2, p. 5. The Isuzu policy is divided into four sections. *Id.* at 10-36. This case does not concern the sections governing liability coverage, first-party coverage and physical damage coverage. The Court's inquiry is limited to Section III, which governs UM and UIM coverage. Section III contains five alternative definitions for the term "insured," but only the first is relevant to this case. *Id.* at 21-22. It is that definition which refers to the "insured" as "the first *person* named in the declarations." *Id.* at 21 (emphasis in original).

vehicle exclusion, cannot reasonably be construed to refer solely to Fleeger, who is the "insured" referenced in Section III. Both Fleeger and Barr are named as insureds on the declarations page, and it is the language of that page which is incorporated within the term "you." Therefore, the van, regularly used by Barr, an insured, was not an "underinsured motor vehicle" within the meaning of the Isuzu policy. *Id.* at 21. If the regularly used vehicle exclusion is enforceable in this case, then as a matter of law, Fleeger is not entitled to UIM coverage. The only remaining question is whether the enforcement of the exclusion is precluded by the public policies embodied within the MVFRL.

The MVFRL requires insurers seeking to insure motor vehicles "registered or principally garaged" in Pennsylvania to offer both UM and UIM coverage as a part of their proposed insurance contracts. 75 PA. CONS. STAT. § 1731(a). An insured has the option to either purchase or reject UM and UIM coverage. *Id.* The statute defines the term "underinsured motor vehicle" as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 PA. CONS. STAT. § 1702. The amount of UM or UIM coverage available under an insurance policy "may not be greater than the limits of liability specified in the bodily injury liability provisions" of that policy. 75 PA. CONS. STAT. § 1736. Pursuant to 75 PA. CONS. STAT. § 1731(c), "[u]nderinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." The primary purpose of UIM coverage is to protect an insured from the risk of being harmed by a negligent driver with inadequate insurance coverage. *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1008-09 (Pa. 1998).

11

Although the MVFRL requires insurers to offer UM and UIM coverage, it does not specify the precise content or extent of that coverage. In other words, the MVFRL provides very little guidance as to whether an insurer may exclude coverage under certain circumstances. As a general matter, a court must give effect to unambiguous contractual language, which constitutes a binding agreement between the insurer and the insured. *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986). However, in some instances, the application of contractual language is precluded by a competing public policy. Contractual provisions in conflict with a statutory scheme cannot be enforced, since private parties are not free to contract their way out of statutory obligations which become a part of the relevant contract by operation of law. *Miller v. Allstate Ins. Co.*, 763 A.2d 401, 404 (Pa. Super. Ct. 2000). The remaining dispositive question in this matter is whether the public policies incorporated within the MVFRL preclude the application of the regularly used vehicle exclusion contained in the Isuzu policy.

The relevant jurisprudence of the Pennsylvania courts concerning the interaction between unambiguous UIM coverage exclusions and the MVFRL is not a model of clarity. The decisions are difficult to reconcile with one another, complicating the Court's ability to ascertain the law applicable to the instant case. This jurisprudence likely reflects some of the complexities of resolving issues that involve both the interpretation of private contractual agreements, and the existence and enforcement of a broad statutory framework geared toward individual and mass consumer protection. The Court must examine both the holdings and rationales of the Pennsylvania decisions in order to resolve the present dispute.

Plaintiff hangs much of her case upon a 1991 Pennsylvania Superior Court cases, *Marroquin*

12

*v. Mutual Benefit Insurance Co.*, which found a "family car exclusion" contained in a UIM policy to be unenforceable. 591 A.2d 290, 291 (Pa. Super. Ct. 1991). In that case, Jose Luis Marroquin ("Marroquin") was injured when he was accidentally struck by an automobile owned and operated by his brother. *Id.* After recovering money from his brother's insurer pursuant to a liability coverage policy, Marroquin attempted to collect UIM payments from his parents' insurer, Mutual Benefit Insurance Company ("Mutual Benefit"), pursuant to UIM coverage. *Id.* at 291. Marroquin was an "insured" under his parents' policy. *Id.* Mutual Benefit refused to provide coverage on the ground that the vehicle owned by Marroquin's brother was not an "underinsured motor vehicle" for purposes of the UIM policy. *Id.* at 291-292. The policy's definition of the term "underinsured motor vehicle" expressly excluded any vehicle "[o]wned by or furnished or available for the regular use of [the insured] or any 'family member.'" *Id.* at 292. The term "family member" was defined as "a person related to [the insured] by blood, marriage or adoption who [wa]s a resident of [the insured's] household." *Id.* Marroquin and his brother lived with their parents and hence were residents of the same household. *Id.* at 291.

The Court adjudicating *Marroquin* ultimately concluded that the application of the "family car exclusion" was precluded by the MVFRL. *Id.* at 298. In so holding, the Superior Court adopted the reasoning employed by the Minnesota Court of Appeals in *DeVille v. State Farm Mutual Insurance Co.*, 367 N.W.2d 574 (Minn. Ct. App. 1985). *DeVille* explained:

> DeVille recovered under the tortfeasor's liability coverage and is now seeking underinsured motorist benefits from her own personal policy with underinsured motorist coverage purchased by her for her own individual protection. This is classic "first-party coverage," and it should follow her wherever she may be located when injured. She

13

> paid separate premiums for the car registered to her, and the policy
> was issued to her.
>
> \*\*\*
>
> Although married, DeVille is a separate person from her tortfeasor
> husband, owns a separate automobile, and has a separate policy. We
> cannot infer that the two are somehow acting as one and attempting
> to convert underinsured motorist coverage into liability coverage.

*DeVille*, 367 N.W.2d at 577. Relying on this language from *DeVille*, the Superior Court declared

that "a policy provision which exclude[d] underinsured motorist benefits when the insured [wa]s

injured while occupying a vehicle owned by the insured or [a] family member [wa]s *presumed to*

*be invalid*." *Marroquin*, 591 A.2d at 296 (emphasis in original). Referencing prior decisions in

*Woglemuth v. Harleysville Mutual Insurance Co.*, 535 A.2d 1145 (Pa. Super. Ct. 1988), and *Newkirk*

*v. United Services Automobile Association*, 564 A.2d 1263 (Pa. Super. Ct. 1989), *Marroquin*

explained that "a limited exception to this rule involve[d] cases in which the plaintiff [wa]s

attempting to convert underinsured coverage (first-party coverage) into liability coverage (third-party

coverage)." *Id.* Determining that this "limited exception" was not applicable, *Marroquin* concluded

its analysis by stating:

> In the instant case, there is no dispute that appellant's underinsured
> motorist coverage followed him to whatever point that he may have
> been injured. The only bar to his recovery was that his brother owned
> the vehicle that injured him. Under the facts of this case, such a bar
> was not justified as its purpose was not to convert underinsured
> motorist coverage into liability coverage.

*Id.* at 297. Because the "family car exclusion" was deemed to be inconsistent with the policies

underlying the MVFRL, Marroquin was entitled to UIM coverage despite the clear and unambiguous

language in the policy excluding his brother's vehicle from the definition of the term "underinsured

14

motor vehicle." *Id.* at 291-98.

The rationale for the "limited exception" referenced in *Marroquin* was later explained by the

United States Court of Appeals for the Third Circuit in *Nationwide Mutual Insurance Co. v.*

*Cosenza*, 258 F.3d 197 (3d Cir. 2001). The Third Circuit explained:

> Liability insurance is the most expensive form of insurance in
> Pennsylvania. UIM insurance, on the other hand, is relatively
> inexpensive. As a result, Pennsylvania courts have refused to
> invalidate insurance contract exclusions that bar an insured from
> converting inexpensive UIM insurance into the more expensive
> liability insurance. Such a conversion can be accomplished when an
> insured purchases a small amount of liability insurance and then, once
> the insured is injured in an accident for which he or she was at fault,
> attempt to claim UIM benefits under the same insurance contract on
> the theory that the vehicle was underinsured.

*Cosenza*, 258 F.3d at 211-212. Under *Marroquin*, a provision of an insurance policy excluding a

"family car" from the definition of the term "underinsured motor vehicle" was invalid unless it could

be shown that the application of the exclusion was necessary to prevent the insured from effectively

converting inexpensive UIM coverage into a *de facto* additional sum of liability insurance.

*Marroquin*, 591 A.2d at 294-297.

Three years after the Superior Court decided *Marroquin*, the Pennsylvania Supreme Court

decided *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234 (Pa. 1994). In *Paylor*, after taking notice of

several relevant judicial decisions, including *Marroquin* and *DeVille*, the Pennsylvania Supreme

Court observed:

> The litany of cases demonstrates that the "family car exclusion" is not
> necessarily violative of public policy or the legislative intent
> underlying the MVFRL. The enforceability of the exclusion is
> dependent upon the factual circumstances presented in each case.

15

> Allowing the "family car exclusion" to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL.

*Paylor*, 640 A.2d at 1240. The "factual circumstances" in *Paylor* placed the case outside of the "general rule" and within the "limited exception," thereby permitting the exclusion to be enforced. *Id.* at 1240-41. Nonetheless, *Paylor* implied that the reasoning employed in *Marroquin* had essentially been adopted as the decisional law of Pennsylvania. As the Third Circuit would later note in *Cosenza*, it was truly "the exception, rather than the rule" for a Pennsylvania court to enforce an exclusion similar to the one at issue in *Marroquin*. *Cosenza*, 258 F.3d at 212. Under *Paylor* and *Marroquin*, an insured could obtain a recovery under a UIM policy simply by establishing that permitting such a recovery "would not allow [him or her] to convert inexpensive UIM coverage into more costly liability coverage." *Id.* at 214.

Fleeger places extensive reliance on the reasoning in *Paylor* and *Marroquin*, and for good reason. Doc. No. 20, pp. 3-10. Just as the only bar to Marroquin's recovery was that his brother (a family member) owned the vehicle at issue, the only bar to Fleeger's recovery is that the van that she was riding in at the time of her injury had been furnished for the regular use of Barr, a named insured on the policy held by Fleeger and Barr. *See Marroquin*, 591 A.2d at 297. The logic behind the Superior Court's decision in *Marroquin* would most likely embrace the argument advanced by Fleeger in this case. However, in the eighteen years since *Marroquin*, Pennsylvania law on this matter has shifted.

In *Burstein v. Prudential Property & Casualty Insurance Co.*, 809 A.2d 204 (Pa. 2002), the

16

Pennsylvania Supreme Court essentially destroyed the basic premise that a contractual restraint on

the portability of UIM coverage was inimical to the legislative intent behind the MVFRL. *State Farm*

*Auto. Ins. Co. v. Coviello*, 220 F. Supp. 2d 401, 406 (M.D. Pa. 2002). Sid and Doreen Burstein were

injured when a speeding motorcyclist crashed into their vehicle. *Burstein*, 809 A.2d at 205. At the

time of the accident, Mr. Burstein was driving a vehicle owned by Mrs. Burstein's employer. *Id.*

The vehicle was available for the personal use of the Bursteins because Mrs. Burstein had been

paying a weekly fee of $25.00 in order to use the vehicle for purposes other than those related to her

job duties. *Id.* at 205 n. 1. The Bursteins recovered the maximum amount permitted under the

motorcyclist's liability policy, but that amount was insufficient to fully compensate them for their

injuries. *Id.* at 205. Unbeknownst to Mrs. Burstein, her employer's vehicle had been insured under

a liability policy, but not under a UIM policy. *Id.* Therefore, the Bursteins looked for alternative

sources of UIM coverage; they owned three vehicles, none involved in the collision but all insured

with UIM coverage under a policy issued by Prudential Property and Casualty Insurance Company.

*Id.* The Bursteins submitted a claim for UIM benefits under that policy, but Prudential denied the

claim pursuant to policy language which provided as follows:

> We will not pay for bodily injury to you or a household resident using
> a non-owned car not insured under this part, regularly used by you or
> a household resident.

*Id.* at 207. The Bursteins commenced an action against Prudential, contending that the "regularly

used, non-owned car exclusion" violated the MVFRL. *Id.* at 205. The case eventually made its way

to the Pennsylvania Supreme Court.

In resolving this issue, the Pennsylvania Supreme Court held that the MVFRL did not

17

preclude the enforcement of the contractual exclusion. *Burstein*, 809 A.2d at 205-10. The

Pennsylvania Supreme Court explained:

> In light of the primary public policy concern for the increasing
> costs of automobile insurance, it is arduous to invalidate an otherwise
> valid insurance contract on account of that public policy. This policy
> concern, however, will not validate any and every coverage
> exclusion; rather, it functions to protect insurers against forced
> underwriting of unknown risks that insureds have neither disclosed
> nor paid to insure. Thus, operationally, insureds are prevented from
> receiving gratis coverage, and insurers are not compelled to subsidize
> unknown and uncompensated risks by increasing insurance rates
> comprehensively.
>
> Here, voiding the exclusion would frustrate the public policy
> concern for the increasing costs of automobile insurance, as the
> insurer would be compelled to underwrite unknown risks that it has
> not been compensated to insure. Most significantly, if this Court
> were to void the exclusion, insureds would be empowered to
> regularly drive an infinite number of non-owned vehicles, and receive
> gratis UIM coverage on all of those vehicles if they merely purchase
> UIM coverage on one owned vehicle. The same would be true even
> if the insureds never disclose any of the regularly used, non-owned
> vehicles to the insurers, as is the case here. Consequently, insurers
> would be forced to increase the cost of insurance, which is precisely
> what the public policy behind the MVFRL strives to prevent. Such
> result is untenable.

*Id.* at 208 (footnote omitted). Taking notice of the provisions of the MVFRL concerning priority of

recovery, the Pennsylvania Supreme Court declared that UIM benefits did not necessarily "follow

the person" in the same manner as other forms of first-party benefits.[4]  *Id.* at 209. In so stating, the

[4] The relevant portion of the MVFRL provides:
> § 1733. Priority of recovery
> (a) General rule.–Where multiple policies apply, payment shall be made in the
> following order of priority:
> (1) A policy covering a motor vehicle occupied by the injured person at the time of
> the accident.
> (2) A policy covering a motor vehicle not involved in the accident with respect to
> which the injured person is an insured.

18

Pennsylvania Supreme Court apparently rejected the rationale which had been articulated by the Minnesota Court of Appeals in *DeVille* and echoed by the Pennsylvania Superior Court in *Marroquin*.

In the aftermath of *Burstein*, the "general rule" against exclusion clauses referenced in *Paylor* and *Marroquin* "has morphed into the minority rule, as most exclusion clauses have been deemed valid." *Nationwide Mut. Ins. Co. v. Riley*, 352 F.3d 804, 809 (3d Cir. 2003). The enforceability of a UIM coverage exclusion has been expanded "beyond the context of an inferred attempt to convert UIM coverage into liability coverage." *Coviello*, 220 F. Supp. 2d at 407. Narrowly drawn UIM coverage exclusions such as the one at issue in this case are no longer presumed to be invalid. *Old Guard Ins. Co. v. Houck*, 801 A.2d 559, 566 (Pa. Super. Ct. 2002)("Conspicuously absent from the Supreme Court's analysis in *Eichelman* is any mention of the presumption that the household exclusion was invalid as against public policy and that an exception to this rule existed for cases in which a claimant sought to convert UIM benefits into liability benefits."). This appears to be due to a recognition that because UIM coverage involves risk to an insurer, the cost of insurance is lessened when an insurer is permitted to lower its risk by excluding or limiting UIM coverage in certain instances. *Progressive N. Ins. Co. v. Schneck*, 813 A.2d 828, 833-834 (Pa. 2002). However,

---

> **(b) Multiple sources of equal priority.**--The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

75 PA. CONS. STAT. § 1733. The Pennsylvania Supreme Court opined that while this statutory language contemplates that UM and UIM coverage may be portable in certain instances, it does not contemplate that such coverage would be available even where it has been expressly excluded under the language of an insurance policy. *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 751, n. 3 (Pa. 2002).

19

such an argument only carries so much weight, because if an overriding policy goal was to promote lower costs of insurance, an insurer would be vindicated every time it sought to exclude UIM coverage. Therefore, this public policy interest "will not validate any and every coverage exclusion." *Burstein*, 809 A.2d at 208. The validity of a UIM coverage exclusion under the MVFRL remains "dependent upon the factual circumstances presented in each case." *Id.* at 207. The relevant question is whether the invalidation of an exclusion would compel an insurer to underwrite a risk that the insured has not paid to insure against. *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 753 (Pa. 2002).

Although Pennsylvania case law has retreated from the specific rationale behind the Superior Court's decision in *Marroquin*, other exclusions may still violate the public policies entrenched within the MVFRL. However, most such exclusions are broader in scope than the exclusion at issue in case *sub judice*. For instance, in *Kmonk-Sullivan v. State Farm Mutual. Automobile Insurance Co.*, the Pennsylvania Supreme Court held that the MVFRL precluded the enforcement of policy language purporting to exclude all government-owned vehicles from the definition of the term "underinsured motor vehicle." 788 A.2d 955 (Pa. 2001). The Court explained that the policy exclusion, if given effect, would withdraw coverage that the MVFRL had required the insurer to offer. *Kmonk-Sullivan*, 788 A.2d at 962. As noted earlier, the MVFRL defines the term "underinsured motor vehicle" as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 PA. CONS. STAT. § 1702. A distinct provision of the MVFRL provides that the statute "does not apply with respect to any motor vehicle owned by the United States." 75 PA. CONS. STAT. § 1703. In *Kmonk-Sullivan*,

20

the Pennsylvania Supreme Court observed that "[a]n exception expressly provided in a statute is a strong indication that the legislature did not intend to exclude unexpressed items." *Kmonk-Sullivan*, 788 A.2d at 962. Given the specific statutory exclusion of motor vehicles owned by the United States contained in the MVFRL, it was determined that an insurer cannot significantly lessen the scope of the UIM coverage available under its policies by excluding *all* government-owned vehicles (including those not owned by the United States). *Id.* at 961-62.

In *Richmond v. Prudential Property & Casualty Insurance Co.*, the Superior Court relied upon *Kmonk-Sullivan* in holding that an insurer could not define the term "underinsured motor vehicle" narrowly enough to exclude motorcycles. 856 A.2d 1260, 1268-1272 (Pa. Super. Ct. 2004). The MVFRL expressly excludes motorcycles from the category of vehicles for which insurers must make available certain forms of liability coverage. 75 PA. CONS. STAT. § 1712. Motorcycles are not specifically excluded from the category of "underinsured motor vehicles" referenced in the portion of the MVFRL concerning UM and UIM coverage. Because the Pennsylvania Legislature declined to exclude motorcycles from the category of motor vehicles covered under the relevant statutory provisions, the Superior Court concluded that the MVFRL did not permit an insurer to categorically exclude all motorcycles from its policy definition of the term "underinsured motor vehicle." *Richmond*, 856 A.2d at 1268-1272.

The exclusions invalidated in *Kmonk-Sullivan* and *Richmond* were much broader in scope than the regularly used vehicle exclusion at issue in this case. Furthermore, the reasoning employed in *Kmonk-Sullivan* and *Richmond*, applied to all situations, would invalidate virtually all policy clauses that seek to more carefully define the scope of a particular coverage. Obviously, the

21

regularly used vehicle exclusion contained in the Isuzu policy narrows the statutory definition of the term "underinsured motorist vehicle" contained in the MVFRL. Barr's van is undoubtedly "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 PA. CONS. STAT. § 1702. However, the Pennsylvania courts have not applied *Kmonk-Sullivan* and *Richmond* so rigidly as to invalidate every policy exclusion which purports to slightly narrow the MVFRL's definition. In *Estate of Demutis v. Erie Insurance Exchange*, 851 A.2d 172 (Pa. Super. Ct. 2004), the Superior Court observed:

> Demutis paid for UIM coverage that would apply to virtually every vehicle in the United States **except** for any vehicle not insured on his policy **and** which belongs to a resident relative. The exception of one or two vehicles from UIM coverage from an untold pool of possibly covered vehicles does not strike us as violative of public policy. Therefore, whether or not Erie would have to pay if Demutis had been a passenger in a friend's car rather than his father's car is immaterial.

*Demutis*, 851 A.2d at 174 (footnote omitted; boldface type in original). Like the narrow exclusion in *Demutis*, the regularly used vehicle exclusion challenged in this case excludes only vehicles not insured under the Isuzu policy that are furnished for the regular use of either Fleeger or Barr. It does not exclude a broad category of vehicles, such as government-owned vehicles or all motorcycles, as in *Kmonk-Sullivan* and *Richmond*.

While no bright-line rule separates policy exclusions which violate the MVFRL from those that do not, the Pennsylvania Supreme Court recently observed that an insured seeking to invalidate an unambiguous policy exclusion must meet a "heavy burden." *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190 (Pa. 2008). Fleeger advances no argument which suffices to meet this burden. She emphasizes that Barr's van was not available for her regular use, but that is inconsequential.

22

Doc. No. 27, p. 7.

This situation is not unlike that in *Nationwide Mutual Insurance Co. v. Schmidt*, 307 F. Supp. 2d 674 (W.D. Pa. 2004). In *Schmidt*, Heidi and Ralph Schmidt were named insureds under a policy issued by Nationwide Mutual Insurance Company. *Id.* at 675. The policy provided insurance for three vehicles, and it included UIM coverage for a maximum of $300,000.00 per occurrence. *Id.* Mr. Schmidt owned a motorcycle in his own name, which was not insured under the policy issued by Nationwide Mutual. *Id.* at 676. The motorcycle was not available for Mrs. Schmidt's regular use. *Id.* Indeed, she did not even possess a license to operate a motorcycle. *Id.* She was only an occasional passenger on the motorcycle. *Id.* On one occasion, she sustained injuries for which Mr. Schmidt was at least partially at fault. *Id.* After collecting the liability limits available under the insurance policy applicable to the motorcycle, which were apparently insufficient to compensate her for her injuries, Mrs. Schmidt submitted a claim to Nationwide Mutual for the $300,000.00 available under the UIM policy. *Id.* Nationwide Mutual denied the claim on the basis of the policy's "household exclusion," which precluded coverage for bodily injury suffered by an insured while occupying a vehicle owned by an insured (i.e., "you") or a relative. *Id.* The word "you" was defined broadly enough to include the policyholder's live-in spouse. *Id.* Mrs. Schmidt commenced an action against Nationwide Mutual, contending that the exclusion was void under the MVFRL; this argument was not successful.

Mrs. Schmidt pointed out that because her husband was the sole owner of the motorcycle, she had no ability to control the amount of liability coverage purchased to insure it. The Court found that fact "immaterial." *Schmidt*, 307 F. Supp. 2d at 681. Mrs. Schmidt also argued that she was

23

entitled to UIM coverage because she had paid premiums for such coverage. *Id.* The Court rejected that argument on the ground that Mrs. Schmidt had paid premiums for the UIM coverage available under the language of the policy, which did not provide coverage under circumstances falling within the household exclusion. *Id.* The Court concluded:

> Nationwide did not factor into the costs of defendant's premium that it would be forced to pay UIM benefits on a motorcycle owned by defendant's husband but not subject to the Nationwide policy. Accepting defendant's argument would permit a family with multiple motor vehicles to obtain UIM coverage for each family member through a single insurance policy that covers one or more vehicles in the household, while failing to cover additional vehicles in the household.

*Id.* at 681-82. These observations were made notwithstanding the motorcycle had not been available for Mrs. Schmidt's regular use, and notwithstanding she had only been an occasional passenger on the motorcycle.

In terms of material facts as they relate to prudent judicial reasoning, *Schmidt* is analagous to the case *sub judice*. That Fleeger was Barr's live-in girlfriend, rather than his wife, is of no dispositive significance. If Barr had not been a named insured on the declarations page for the Isuzu policy, Fleeger's status as a live-in girlfriend would likely have been material. Barr was not Fleeger's "spouse" or "relative" for purposes of this exclusion. Doc. No. 23, ex. 2, pp. 6-7, 21. However, the word "you," as defined in the exclusion, includes Barr because his name appears on the declarations page. Doc. No. 1, ex. 4, p. 3; Doc. No. 23, ex. 2, pp. 7, 21. For this reason, the exclusion is applicable regardless of Fleeger's and Barr's marital status. Although Fleeger points out that she was not Barr's spouse at the time of the accident, she fails to explain what effect, if any,

24

an insured's marital status should have on the public policy analysis involving the named insured exclusion. Doc. No. 20, p. 9. The extent of an insurer's risk does not depend on whether two residents of the same household are married to each another. Rather, courts have recognized that the presence of multiple vehicles within a single household presents an insurer with a statistically higher risk than does an insured's decision to ride in a vehicle owned and operated by someone residing in a different household.[5] *E.g., Nationwide Mut. Ins. Co. v. Straitwell*, 323 F. Supp. 2d 654, 659 (W.D. Pa. 2004). Fleeger's argument regarding her status as girlfriend rather than spouse is not relevant, given that the application of the regularly used vehicle exclusion depends only upon Barr's status as a named insured, not the nature of her relationship with Fleeger.

Admittedly, Pennsylvania courts have not established a clear and simple line between those exclusions permissible under the MVFRL and those that are voided. However, for the foregoing reasons, the Court is confident that the regularly used vehicle exclusion is permissible. Fleeger's arguments are based on dated cases and assumptions, abandoned by Pennsyvlania courts. While Pennsylvania law requires an insurer to offer some degree of UIM coverage, narrowly tailored policy exclusions, like the one at issue in this case, will be upheld as products of the rights of the parties to enter into specific contractual arrangements. *See Nationwide Assurance Co. v. Easley*, 960 A.2d 843, 844-845 (Pa. Super. Ct. 2008). This Court has no license to invoke abstract principles of public policy to rescue Fleeger from the plain language of the insurance contract she entered into with State Farm.

---

[5]The Court notes that the Isuzu policy defines the term "spouse" to mean an insured's husband or wife only when he or she resides with the insured. Doc. No. 23-2, p. 7.

## VI. CONCLUSION

The Court finds that the Isuzu policy unambiguously excludes Barr's van from the definition of the term "underinsured motorist vehicle." Furthermore, this exclusion does not violate the public policies incorporated within the MVFRL. Therefore, State Farm is entitled to judgment as a matter of law as to Fleeger's claim for damages pursuant to the at-issue insurance contract. Accordingly, the Court will deny Fleeger's Motion for Summary Judgment (Doc. No. 18) and grant State Farm's Motion for Summary Judgment (Doc. No. 21). An appropriate order follows.

**AND NOW**, this 16th day of March, 2009, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Doc. No. 18) and the Motion for Summary Judgment filed by the Defendant (Doc. No. 21), IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment is **DENIED**, and that the Defendant's Motion for Summary Judgment is **GRANTED**.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**